**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


VERNON D. DAVIS,               )
                                   )
               Plaintiff,        )      Civil Action   05-1609
                                   )
               v.              )
                                   )
UNITED STATES OF AMERICA,     )
                                   )
               Defendant.    )


**<u>MEMORANDUM ORDER</u>**


CONTI, District Judge.

      Pending before this court is a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12 (b)(1), or in the alternative, a motion for summary judgment under Federal Rule of

Civil Procedure 56 (Doc. No. 9) filed by the defendant, the United States of America

("defendant").  In the motion, defendant argues that plaintiff's amended complaint should be

dismissed because this court lacks subject-matter jurisdiction over the negligence claim set forth

in the amended complaint.  Specifically, defendant argues that the negligence claim, filed

pursuant to the Federal Torts Claim Act, 28 U.S.C.A. §§ 1346(b), 2671 <u>et</u>. <u>seq</u>., ("FTCA"), is

barred by the applicable statute of limitations because it was not filed within six months of final

denial of the claim by the United States Postal Service ("USPS").  <u>See</u> 28 U.S.C. § 2401 (b).

      Plaintiff argues that this suit was timely filed because the initial written claim he

submitted to the USPS dated July 25, 2003, by plaintiff and marked received by the USPS on

1

July 28, 2003, using the Standard Form 95 ("Claim for Damage, Injury, or Death")(hereinafter, plaintiff's "July 2003 SF-95") was not a valid or fully executed claim.  Plaintiff argues that his July 2003 SF-95 claim does not constitute a valid claim because the tort claims analyst for the Postal Service misrepresented to him that his July 2003 SF-95 was merely a car estimate necessary to get his car repaired and not a claim for all damages arising from the incident.  In essence, plaintiff would estop defendant from asserting the statute of limitations argument set forth in the motion to dismiss because he alleges that he was fraudulently induced to submit his July 2003 SF-95 claim.

The court finds defendant's jurisdictional challenge to be meritorious and therefore dismisses the complaint with prejudice.  Because the court lacks subject-matter jurisdiction over plaintiff's claim, the court does not reach defendant's alternative motion for summary judgment.

### *Factual Background*

**A. Factual Allegations in the Complaint**

Plaintiff's complaint alleges the following facts.  On June 17, 2003, at approximately 6:00 a.m., plaintiff was driving to work in his 1994 Ford Taurus.  Amended Complaint ("Comp.") ¶13.  While stopped at a traffic signal, plaintiff's vehicle was struck from behind by a USPS tractor-trailer driven by Walter Evans, a USPS employee ("Evans").  Id. ¶¶ 4-5, 14-16. As a result of the collision, plaintiff alleges both property damage and personal injuries which he claims were caused by the negligence of Evans.  Id. ¶¶ 17-21.

**B. Facts Relating to the Filing of Plaintiff's Claim with the USPS**

Defendant submits a declaration from an attorney at USPS and supporting exhibits in support of its factual contentions relating to events that occurred after the accident in relation to the filing of plaintiff's claim. See Defendant's Memorandum of Law in Support of Motion to Dismiss or, in the alternative, Motion for Summary Judgment ("Def.'s Mem."), Ex. 1 (Declaration of Stanford M. Bjurstrom)("Bjurstrom Decl.")(with supporting exhibits A-E ("Def.'s Ex. ___")). In submissions in response to the pending motion to dismiss, plaintiff avers additional facts and submits an affidavit and exhibits in support of his factual contentions relating to events that occurred after the accident in relation to the filing of his claim. See Answer to Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. No. 13); Memorandum of Law in Support of Plaintiff's Answer (Doc. No. 15); and plaintiff's Affidavit (Doc. No. 16)(with supporting exhibits A-G ("Pl.'s Ex. ___")).

The court will review the factual record submitted by the parties to determine the factual circumstances relating to the issue of subject-matter jurisdiction over plaintiff's negligence claim.[1] There is no dispute that on July 28, 2003, USPS received from plaintiff the July 2003 SF-95 claim. Def.'s Ex. A; Pl.'s Ex. D. Plaintiff alleged on the July 2003 SF-95 property damage in the amount of $698.79 for repairs to his vehicle and no personal injury damage. Id. There is no dispute that plaintiff's counsel in a letter dated July 25, 2003, notified Patricia A. Sullivan ("Sullivan") at the USPS Tort Claims Office that plaintiff was represented by counsel and requested that all correspondence relating to the claim be sent to that counsel. Def.'s Ex. B; Pl.'s Ex. E. In addition, there is no dispute that the USPS denied plaintiff's July 2003 SF-95

---

[1] See infra for discussion of standard for deciding a Rule 12(b)(1) motion.

claim approximately eight and one-half months later in a letter dated April 14, 2004, addressed to plaintiff's counsel.  Def.'s Ex. C.

No reason for the denial was stated in the letter.  The letter, however, informed plaintiff and his counsel that he had six months to file suit in federal district court or to file a written request for consideration with the USPS:

> In accordance with 28 U.S.C. § 2401(b) and 39 C.F.R. § 912.9(a), if dissatisfied with the Postal Service's final denial of an administrative claim, **a claimant may file suit in a United States District Court no later than six (6) months after the date the Postal Service mails the notice of that final action**.  **Accordingly, any suit filed in regards to this denial must be filed no later than six (6) months from the date of the mailing of this letter, which is the date shown above.** . . .
>
> **Alternatively,** and in accordance with the regulations set out at 39 C.F.R. 912.9(b), **prior to the commencement of suit and prior to the expiration of the six (6) month period provided in 28 U.S.C. § 2401 (b), a claimant, his duly authorized agent, or legal representative, may file a written request for reconsideration** with the postal official who issued the final denial of the claim. . . .

Id. (emphasis added).  Defendant submitted to the court the certified mail receipt showing that this letter was received by plaintiff's counsel.  Id.  The USPS did not receive a request for reconsideration from plaintiff or plaintiff's counsel within the six-month period following the April 14, 2004, denial letter.  Bjurstrom Decl. ¶9.  Plaintiff did not file a complaint in federal district court within the six-month period.  Id.

Plaintiff, however, subsequently filed through his counsel a second Standard Form 95 dated May 3, 2005 and marked received May 5, 2005 (hereinafter, plaintiff's "May 2005 SF-95").  Def.'s Ex. E.  The May 2005 SF-95 claim was received over one year after the April 14, 2004 denial letter was sent.  In the May 2005 SF-95 claim, plaintiff re-alleged property damage

of $698.79 and added a claim for personal injury damage in the amount of $80,000.00.  Id.

Plaintiff, by his counsel, also supplemented his responses to other questions on the form.  Id.

The parties dispute the effect of circumstances that took place after the accident and

before the USPS' communications with plaintiff's counsel concerning plaintiff's claim.  Plaintiff

asserts that he informed the USPS by a letter from his counsel dated July 16, 2003, that he was

represented by counsel.  Pl.'s Ex. A (July 16, 2003 Letter from Andrew Glasgow to Tom

Dziubinski).  There is no indication in the record whether this letter was received by USPS or

forwarded to Patricia A. Sullivan, the USPS claims analyst with whom plaintiff was in contact.

According to plaintiff, however, USPS had contact with him directly by letter stamped July 17,

2003, from Sullivan to plaintiff enclosing a blank Standard Form 95.  Pl.'s Ex. B.  This letter

included Sullivan's telephone number (handwritten on the letter) and notified plaintiff that he

could contact Sullivan if he had any questions concerning the matter.  Id.  Enclosed was a blank

Standard Form 95.  Id.  It was this form that plaintiff filled out and submitted as his July 2003

SF-95 claim.

In addition to this written correspondence, plaintiff avers that he had several telephone

conversations with Sullivan between July 22 and July 28, 2003.  See Pl.'s Aff. ¶¶ 7-9.  Plaintiff

avers that he initially received the blank Standard Form 95 as a result of a telephone conversation

with Sullivan during which they discussed the need for repairs to his car.  Id. ¶6.  Plaintiff also

avers that he had telephone conversations with Sullivan between July 22, 2003, and July 25,

2003, about getting his car repaired, during which Sullivan advised him to take his car to a

garage on West Liberty Avenue in Pittsburgh and that she needed an estimate before the USPS

would pay for repairs to the car.  Id. ¶7.  In addition, plaintiff avers that when he mailed her the

July 2003 SF-95 he believed that he was submitting "only an estimate" for car repairs, and not that he was filing a legal claim for the accident.  Id. ¶8.

Plaintiff avers that he mailed the July 2003 SF-95 without consulting his counsel because he firmly believed that in submitting the form he was only supplying an estimate for car repairs. Id.  The Standard Form 95 that plaintiff used, however, which is titled "Claim for Damage, Injury, or Death," instructs claimants to "[p]lease read carefully the instructions on the reverse side and supply information requested on both sides of the form;" and in the section entitled "amount of claim," indicates in the box for totaling the amount of the claim for property damage, personal injury, and wrongful death (item 12) that "[f]ailure to specify may cause forfeiture of your rights."  Def.'s Ex. A; Pl.'s Ex. D  at 1.  The instructions on the reverse side of the form provide in all caps:

> A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED
> WHEN A FEDERAL AGENCY RECEIVES FROM A
> CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL
> REPRESENTATIVE AN EXECUTED STANDARD FORM 95
> OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT
> ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A
> **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY,
> PERSONAL INJURY, OR DEATH ALLEGED TO HAVE
> OCCURRED BY REASON OF THE INCIDENT.  THE CLAIM
> MUST BE PRESENTED TO THE APPROPRIATE FEDERAL
> AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM
> ACCRUES.

Id. at 2 (emphasis in original).  Moreover, the instructions explicitly state that:

> If claimant intends to file claim [sic] for both personal
> injury and property damage, claim for both must be shown in item
> 12 of this form. . . .
>
> **Failure to specify a sum certain will result in invalid
> presentation of your claim and may result in forfeiture of your**

6

**rights.**

Id. (emphasis in original).  The form also instructs claimants to "[c]omplete all items – insert the word NONE where applicable."  Id.

Plaintiff avers that he spoke to Sullivan on July 28, 2003, at approximately 12:45 p.m. She told him she had sent a form to his attorney that is used to file the personal injury and the car repair as one claim.  She also said she received a copy of his car estimate, and instructed plaintiff to have his attorney call her because she was not supposed to speak directly to him.  Id. ¶9. Plaintiff avers that he believes that Sullivan deceived him concerning the nature and function of the July 2003 SF-95 form.  Id. ¶10.  He avers that he believes that he filed his claim with the USPS for his June 17, 2003 accident on May 3, 2005 when his attorney mailed the May 2005 SF-95 to Sullivan.  Id. ¶11.

Defendant responds that, upon being advised that plaintiff was represented by counsel, Sullivan sent a letter to plaintiff's counsel on August 2, 2003, enclosing a copy of the July 2003 SF-95 submitted by plaintiff to the USPS.  Defendant's Reply Brief (Doc. No. 27), Ex. A (August 2, 2003 Letter from Patricia Sullivan to Andrew Glasgow).  This letter acknowledges receipt of correspondence from Mr. Glasgow on August 2, 2003, that same day, advising the USPS that he represented plaintiff.  Id.

Defendant also avers that at no time did plaintiff's counsel seek to amend the July 2003 SF-95 to add a claim for personal injury although it is well-settled that an administrative tort claim filed pursuant to the FTCA may be amended at any time prior to the federal agency's issuance of a written denial of the claim pursuant to 28 C.F.R. § 14.2(c) and 39 C.F.R. § 912.5(b)(3).  See Def.'s Reply Brief, Ex. B (copies of 28 C.F.R. § 14.2(c) and 39 C.F.R. §

7

912.5(b)(3)).  In addition, defendant avers that plaintiff's counsel did not seek reconsideration of

the USPS's denial of the claim within the six-month statute of limitations as authorized by 28

C.F.R. § 14.9(b).  See id., Ex. C (copy of C.F.R. § 14.9).  Indeed, the April 14, 2004 denial letter

sent to plaintiff through his counsel relayed these deadlines to plaintiff and his counsel.  See

Def.'s Ex. C.  Plaintiff filed this lawsuit on November 18, 2005.


### *Standard for Deciding a Rule 12 (b)(1) Motion to Dismiss*

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction raises the issue

whether the court has the power to hear the matter before it.  Mortensen v. First Fed. Sav. &

Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  The burden of establishing jurisdiction lies with

the party seeking to invoke the court's jurisdiction.  Kehr Packages, Inc. v. Fidelcor, Inc., 926

F.2d 1406, 1409 (3d Cir. 1991); Mortensen, 549 F.2d at 891.

A Rule 12 (b)(1) motion to dismiss for lack of subject-matter jurisdiction may facially or

factually challenge the court's jurisdiction.  Mortensen, 549 F.2d at 891; Gould Electronics, Inc.

v. U.S., 220 F.3d 169, 176 (3d Cir. 2000)(citing Mortensen, 549 F.2d at 891).  In reviewing a

facial attack, a court considers the allegations of the complaint and documents referenced therein

and attached thereto in the light most favorable to the plaintiff.  See Gould, 220 F.3d at 176;

PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 1993).[2]  In reviewing a factual attack, the court

may consider evidence outside the pleadings, including affidavits.  See Gotha v. U.S., 115 F.3d

---

[2]A facial challenge is a technical defect that occurs when the allegations in the complaint
do not sufficiently illustrate the court's jurisdiction.  5A CHARLES ALAN WRIGHT & ARTHUR R.
MILLER, FEDERAL PRACTICE AND PROCEDURE §1350 (2d ed. 1990).

176, 178-79 (3d Cir. 1997).[3]  When a court's power to hear a case is at issue, a court is free to weigh the evidence regarding jurisdiction.  Mortensen, 549 F.2d at 891-92.

This motion to dismiss presents a factual attack on the court's jurisdiction based upon the statute of limitations under the FTCA.  The court will consider all pleadings and exhibits submitted by the parties relating to subject-matter jurisdiction.[4]

### *Discussion*

A.   **Waiver of Sovereign Immunity under the FTCA**

In Dolan v. U.S. Postal Service, 377 F.3d 285, 287 (3d Cir. 2004)(overruled on other grounds in Dolan v. U.S. Postal Service, 546 U.S. 481 (2006)), the United States Court of Appeals of the Third Circuit recognized that "[i]t is a fundamental principle of sovereign immunity that federal courts do not have jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit." (citing United States v. Bein, 214 F.3d 408, 412 (3d Cir. 2000); United States v. Mitchell, 463 U.S. 206, 212 (1983)).  "[W]hen the Government does consent to be sued, 'the terms of the waiver of sovereign immunity define the extent of the court's jurisdiction.'"  Id.  (citing Bein, 214 F.3d at 412 (quoting United States v. Mottaz, 476 U.S. 834, 841 (1986))).  "Waivers of the

---

[3]A factual challenge is a substantive defect that occurs when the court lacks actual subject-matter jurisdiction regardless of the sufficiency of the allegations in the complaint.  5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1350 (2d ed. 1990).  In that instance, the court may consider evidence outside the complaint.  Mortensen, 549 F.2d at 891.

[4]Although defendant asserted that plaintiff submitted a supplemental memorandum of law without permission of the court and requested the court to disregard that memorandum, the court need not resolve that issue.

Government's sovereign immunity, to be effective, must be unequivocally expressed, and any such waiver must be construed strictly in favor of the sovereign." Id. (citing Bein, 214 F.3d at 412 (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992))).

The FTCA waives the government's sovereign immunity when government employees act negligently within the scope of their official duties.  Id.(citing 28 U.S.C. § 1346(b)).  It provides that, subject to certain exceptions, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. §2674.  More specifically, the FTCA further provides that the United States is liable for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. §2679(b)(1).

The FTCA, however, expressly limits the jurisdiction of the district courts to hear claims by imposing strict administrative requirements for claimants who wish to commence a civil suit against the United States in federal court.  Claimants must first file an administrative claim with the relevant government agency before commencing a lawsuit.

> An action shall not be instituted upon a claim against the United States for money damages for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail**. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section . . . .

28 U.S.C. § 2675(a) (emphasis added).  The filing of an administrative claim is a jurisdictional

prerequisite to a FTCA suit which, under the jurisprudence of this Circuit, cannot be waived:

> As a sovereign, the United States is immune from suit save as it
> consents to be sued. The terms of its consent to be sued in any
> court define the court's jurisdiction to entertain the suit . . . .
> Although the [FTCA] allows suits against the Government for torts
> committed by its employees while in the scope of their
> employment, it specifically requires an initial presentation of the
> claim to the appropriate federal agency and a final denial by that
> agency as a prerequisite to suit under the Act. **This requirement is
> jurisdictional and cannot be waived.**

 Bialowas v. United States, 443 F.2d 1047, 1048-49 (3d Cir. 1971) (internal citations omitted)

(emphasis added).

## B.     Statute of Limitations under the FTCA

As previously stated, the FTCA waives sovereign immunity when government employees

act negligently within the scope of their official duties and gives jurisdiction over those claims to

the federal courts.  28 U.S.C. § 1346 (b)(1).  This jurisdiction, however, is limited to claims that

are filed within the required statute of limitations provided in 28 U.S.C. § 2401(b)**:**

> A tort claim against the United States shall be forever barred unless
> it is presented in writing to the appropriate Federal agency within
> two years after such claim accrues or **unless action is begun
> within six months after the date of mailing, by certified or
> registered mail, of notice of final denial of the claim by the
> agency to which it was presented**.

Id. (emphasis added). Section 2401(b) provides two ways by which a claim against the United

States government may be barred: (1) a claim may be barred if it is not presented to the proper

agency within two years of the accrual of the claim, or (2) if the action is not begun within six

11

month after the date of final denial of the claim by the agency.[5]

In this case, if plaintiff's July 2003 SF-95 was a valid, fully executed claim, as argued by defendant, the pending motion to dismiss must be granted due to the jurisdictional bar imposed by the statute of limitations set forth in section 2401(b). Based upon such a finding, the April 14, 2004, final denial of plaintiff's July 2003 SF-95 claim triggered the six-month time period for filing this civil action. Because plaintiff did not institute this lawsuit until November 13, 2005, almost nineteen months after the April 14, 2004, denial of the July 2003 SF-95 claim, defendant argues that the statute of limitations bars this court's jurisdiction. In addition, because plaintiff did not timely seek to amend this claim or timely seek reconsideration of the denial of this claim, and no further claim was filed until May 3, 2005, thirteen months after final denial of the July 2003 SF-95 claim, defendant argues that this court lacks subject-matter jurisdiction over plaintiff's claim.

The question before the court, therefore, is whether plaintiff's July 2003 SF-95 constitutes a valid, fully-executed claim. A jurisdictionally adequate presentment of a claim under the FTCA requires (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim. 28 U.S.C.A. § 1346, 2671 et seq.; 28 C.F.R. § 14.2(a);[6] 39 C.F.R. § 912.5(a);[7] see Roma v. United States, 344 F.3d

_____

[5] There is no dispute that plaintiff filed both the July 2003 SF-95 claim and the May 2005 SF-95 claim within two years of the alleged motor vehicle accident. There is no dispute that plaintiff filed this civil action outside of the six-month period following the denial of the July 2003 SF-95 claim and within six months of the denial of the May 2005 SF-95 claim.

[6] 28 C.F.R. § 14.2(a) provides that "[f]or purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum

352, 362-63 (3d Cir. 2003)("In other words, notice in the form of an administrative claim

'satisfies section 2675's requirement . . . if the claimant (1) gives the agency written notice of his

or her claim sufficient to enable the agency to investigate and (2) places a value on his or her

claim.")(quoting <u>Tucker v. United States Postal Serv.</u>, 676 F.2d 954, 959 (3d Cir.1982)).

According to this standard, the July 2003 SF-95 was a valid claim because (1) it was

submitted in writing by the plaintiff to the USPS, indeed it was submitted on the standard form

for making this kind of claim, and (2) it requested a certain sum of damages - $698.79 –  for car

repairs and rental fees.  The July 2003 SF-95 appears on its face to be a valid claim.  As noted

above, the form that plaintiff filled out was titled "Claim for Damage, Injury, or Death" and

contained detailed directions that included the instruction that if a claimant intends to file a claim

for both personal injury and property damage, both claims must be listed in the designated area of

---

certain for injury to or loss of property, personal injury, or death alleged to have occurred by
reason of the incident. . . ."

[7]39 C.F.R. § 912.5(a) provides:

> For purposes of this part, a claim shall be deemed to have been
> presented when the U.S. Postal Service receives from a claimant,
> his duly authorized agent or legal representative, an executed
> Standard Form 95, Claim for Damage or Injury, or other written
> notification of an incident, accompanied by a claim for money
> damages in a sum certain for injury to or loss of property, personal
> injury, or death alleged to have occurred by reason of the incident.
> A standard Form 95 may be obtained from the local District Tort
> Claims Coordinator, the National Tort Center, or online at usa.gov
> (select Government forms). . . .

<u>Id</u>.  Title 39 of the Federal Regulations pertains to the Postal Service.  Part 912 pertains to
"Procedures to Adjudicate Claims for Personal Injury or Property Damage Arising Out of the
Operation of the U.S. Postal Service."  Section 912.5 explains "Administrative claim; when
presented."

the form.  See Def.'s Ex. A; Pl.'s Ex. D.  The form also designated specific boxes for the

"amount of claim."  Id. at 1 ("12a. PROPERTY DAMAGE;" "12b. PERSONAL INJURY;"

"12c. WRONGFUL DEATH;" and "12d. TOTAL (Failure to specify may cause forfeiture of

your rights).").

Plaintiff argues, however, that the July 2003 SF-95 was not a valid claim because it was

based upon mistake or fraud, and that this court now has jurisdiction because a timely and valid

claim was filed by the presentment of the May 2005 SF-95 claim.  Although the plaintiff frames

this issue as one of fraud or misrepresentation, the essence of his argument is that the government

should be equitably estopped, which argument the United States Supreme Court has directly

addressed in Office of Personnel Management v. Richmond, 496 U.S. 414 (1990).[8]  The court

notes that plaintiff is not asserting, and cannot assert, a separate claim of fraudulent

misrepresentation or some other intentional tort as the basis of his FTCA lawsuit against the

government.[9]

------

[8]Defendant does not address plaintiff's argument in terms of equitable estoppel or discuss the standard set forth in Richmond and its progeny.  Defendant argues, however, that because courts strictly construe the six-month period set forth in section 2401(b) plaintiff's lawsuit must be dismissed.  See Def.'s Reply Brief.  Defendant also emphasizes that plaintiff, who was represented by counsel, did not seek to amend the July 2003 SF-95 nor request reconsideration of the denial within the requisite time frames.  In addition, defendant argues that plaintiff never raised this fraud or misrepresentation argument until the present briefing.

[9]As a threshold matter, these allegations were not submitted to the administrative agency for review and denial before this lawsuit was filed.  In addition, "the FTCA by its terms excludes both negligent and intentional misrepresentation claims from its coverage."  Richmond, 496 U.S. at 430 (quoting 28 U.S.C. § 2680(h)(excepting, among others, "[a]ny claim arising out of . . . misrepresentation, deceit. . . .")).

**C.      Equitable Estoppel**

**1.      Unites States Supreme Court Precedent on Equitable Estoppel Against the Government - <u>Office of Personnel Management v. Richmond</u>**

In <u>Richmond</u>, the United States Supreme Court considered the question whether erroneous oral and written advice given by a government employee to a  benefits claimant may give rise to estoppel against the government and so entitle the claimant to a monetary payment not otherwise permitted by law.  The Supreme Court reversed the United States Court of Appeals for the Federal Circuit and held that payments of money from the Federal Treasury are limited to those authorized by statute, basing its reasoning in large part on the effect of the Appropriations Clause of the United States Constitution.  <u>See</u> U.S. CONST. ART. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law.").  The Court held that the Appropriations Clause provided an explicit rule of decision for a claim for money from the Federal Treasury, noting in that case the money to be paid out came from the Civil Service Retirement and Disability Fund.  <u>Id</u>. at 424.

In <u>Richmond</u>, the respondent Charles Richmond sought advice from a federal employee and received erroneous information related to his inquiry about the statutory limit on earnings that would disqualify him from his disability annuity.  <u>Id</u>. at 416.  Specifically, after taking disability retirement for a vision impairment from his job as a welder at a Navy facility, the respondent worked part-time as a school bus driver.  <u>Id</u>. at 417.  Upon receiving an opportunity to work overtime, respondent asked an employee relations specialist at the Navy facility's civilian personnel department how much he could earn without exceeding the 80% eligibility limit established by the relevant statute.  <u>Id</u>. at 418.  The specialist gave him false information and

furnished him with an out-of-date form.[10]  Id.  Based upon that advice, he earned more than

permitted by the eligibility requirements of the relevant statute and lost six months of benefits.

Id.

The respondent in Richmond argued that the erroneous advice should give rise to

equitable estoppel against the government and sought an order for payment of the benefits

contrary to the statutory terms.  Id.  After exhausting appeals with the relevant administrative

agency, the respondent appealed to the Court of Appeals for the Federal Circuit.  A divided panel

of that court accepted respondent's argument, noting that the Supreme Court had acknowledged

that an estoppel argument against the government is not foreclosed and courts of appeals had

applied estoppel against the government.  Id.  The court of appeals reasoned that the provision of

the out-of-date form was "affirmative misconduct" that should estop the government from

denying the respondent benefits.  Id.  The Supreme Court reversed, rejecting the respondent's

argument and holding that payments of money from the Federal Treasury are limited to those

authorized by statute.  Id.  at 416.

The Court began its analysis by noting that equitable estoppel does not lie against the

government as against private litigants, citing decisions filed as early as 1813.  Id. at 419-21

(citing, inter alia, Lee v. Munroe, 11 U.S. 366 (1813)).  The Court noted, however, that "[d]espite

the clarity of these earlier decisions, dicta in our more recent cases have suggested the possibility

that there might be some situation in which estoppel against the Government could be

---

[10]Specifically, the specialist told respondent that he could retain his annuity unless his
income exceeded 80% of the rate of pay of his position prior to retirement for two consecutive
years and the specialist provided him with an out-of-date form which also stated the two-year
rule.  Id. at 417-18.  In fact, the relevant statute had been amended to change the measuring
period from two years to one year.  Id.

appropriate."  Id. at 421 (citing an observation in Montana v. Kennedy, 366 U.S. 308 (1961) as the genesis of this idea).

In Kennedy a petitioner brought a declaratory judgment action seeking to establish his American citizenship and the Supreme Court rejected, among other arguments, his argument that a consular official's erroneous advice to his mother that she could not return to the United States while pregnant prevented him from having been born in the United States and thus deprived him of United States citizenship.  Kennedy, 366 U.S. at 314-15.  In Richmond, the Court commented on Kennedy and noted,  "[o]ur discussion was limited to the observation that in light of the fact that no legal obstacle prevented petitioner's mother from returning to the United States, 'what may have only [been] the consular official's well-meant advice – "I am sorry, Mrs., you cannot [return to the United States] in that condition" – falls far short of misconduct such as might prevent the United States from relying on petitioner's foreign birth.'"  Id. at 421 (quoting Kennedy, 366 U.S. at 314-15).

The Supreme Court in Richmond also noted:

> The proposition about which we did not "stop to inquire" in Kennedy has since taken on something of a life of its own. Our own opinions have continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of "affirmative misconduct" might give rise to estoppel against the Government.

Id. at 421-22.[11]  The Court observed that its language in these decisions had "spawned numerous

---

[11]The Court cited the following decisions as examples: INS v. Hibi, 414 U.S. 5, 8 (1973) ( per curiam ) ("While the issue of whether 'affirmative misconduct' on the part of the Government might estop it from denying citizenship was left open in [Kennedy], no conduct of the sort there adverted to was involved here");  Schweiker v. Hansen, 450 U.S. 785, 788 (1981) ( per curiam ) (denying an estoppel claim for Social Security benefits but observing that the Court "has never decided what type of conduct by a Government employee will estop the Government

claims for equitable estoppel in the lower courts." <u>Id</u>. at 422.  The Court further commented that

the issue had received inconsistent treatment from the various courts of appeals and had been the

subject of "considerable ferment."  <u>Id</u>. (quoting <u>Hansen</u>, 450 U.S. at 791 (citations omitted)).

That is,

> [s]ince that observation was made, federal courts have continued to
> accept estoppel claims under a variety of rationales and analyses.
> In sum, Courts of Appeals have taken our statements as an
> invitation to search for an appropriate case in which to apply
> estoppel against the Government, yet we have reversed every
> finding of estoppel that we have reviewed.

<u>Id</u>. (noting that no less than three of its most recent decisions in this area were summary reversals

of decisions upholding estoppel claims and that summary reversals are unusual under any

circumstances). The Court reasoned that the "extraordinary number of such dispositions in this

single area of the law provides a good indication that our approach to these cases has provided

inadequate guidance for the federal courts and served only to invite and prolong needless

litigation." <u>Id</u>. at 422-23.

  In <u>Richmond</u>, the Supreme Court rejected the government's proposed rule that estoppel

may not in any circumstances run against the government, "leav[ing] for another day whether an

estoppel claim could <u>ever</u> succeed against the Government," and instead found a "narrower

ground of decision [to be] sufficient to address the type of suit presented [in <u>Richmond</u>], a claim

for a payment of money from the Public Treasury contrary to a statutory appropriation.  <u>Id</u>.  423-

---

from insisting upon compliance with valid regulations governing the distribution of welfare
benefits"); <u>INS v. Miranda</u>, 459 U.S. 14, 19, (1982) ( per curiam ) ("This case does not require us
to reach the question we reserved in <u>Hibi</u>, whether affirmative misconduct in a particular case
would estop the Government from enforcing the immigration laws"); <u>Heckler v. Community
Health Services</u>, 467 U.S. 51, 60 (1984)("We have left the issue open in the past, and do so again
today").

24 (emphasis added).

The Court determined that the Appropriations Clause provided an explicit rule of decision for a claim for money from the Federal Treasury.  Id. at 424.  Namely, the Court found, the effect of the "straightforward and explicit command of the Appropriations Clause" was that no money can be paid out of the Treasury unless it has been appropriated by an Act of Congress. Id. (citing Cincinnati Soap Co. v. United States, 301 U.S. 308, 321 (1937)).

Commenting that the command of the Appropriations Clause is not limited to relief available in a judicial proceeding seeking payment of public funds, the Court noted its previous decision that a Presidential pardon, while it may remove disabilities of being convicted of treason, does not extend to an order to repay from the Treasury the proceeds derived from the sale of a convict's property.  Id. at 425 (citing Knote v. United States, 95 U.S. 139, 154 (1877)). The Court reasoned that just as the pardon power of the Executive cannot override the command of the Appropriations Clause, "so too judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.  Id. (citations omitted).  The Court discussed in detail the policy rationale for that rule, which included the argument that "[e]xtended to its logical conclusion, operation of estoppel against the Government in the context of payment of money from the Treasury could in fact render the Appropriations Clause a nullity." Id. at 428.

> If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the Clause reposes in Congress in effect could be transferred to the Executive. If, for example, the President or Executive Branch officials were displeased with a new restriction on benefits imposed by Congress to ease burdens on the fisc (such as the restriction imposed by the

19

> statutory change in this case) and sought to evade them, agency
> officials could advise citizens that the restrictions were
> inapplicable. Estoppel would give this advice the practical force of
> law, in violation of the Constitution.

Id.

The Court considered the opposite result as well – that the Executive might frustrate congressional intent to appropriate benefits by instructing its agents to give claimants erroneous advice, but reasoned that Congress can always exercise its power to expand recoveries in certain circumstances, and noted that Congress had provided appropriate legislative relief where it had been concerned about the possibility of significant detrimental reliance on the erroneous advice of government agents.  Id. (citations omitted).

The Court expressly contemplated the FTCA in its Richmond opinion in two ways.  First, the Court noted that the provisions of the FTCA evidenced Congress' general approach of rejecting the use of its appropriation power to fund misrepresentation claims made by government agents.  The provisions of the FTCA, the Court reasoned, "provide a strong indication of Congress' general approach to claims based on governmental misconduct, and suggest that it has considered and rejected the possibility of an additional exercise of its appropriation power to fund claims similar to those advanced here."  Id.  (noting that the FTCA provides authorization in certain circumstances for suits by citizens against the federal government for torts committed by government agents, but by its terms excludes both negligent and intentional misrepresentation claims from its coverage, citing 28 U.S.C. § 2680(h)).

> The claim brought by respondent is in practical effect one for
> misrepresentation, despite the application of the "estoppel" label.
> We would be most hesitant to create a judicial doctrine of estoppel
> that would nullify a congressional decision against authorization of

the same class of claims.

Id. at 430-31.

Second, the Court noted that, unlike the situation in Richmond, Congress has made a general appropriation of funds to pay judgments for suits including suits under the FTCA.  Id. at 431 (citing 31 U.S.C. § 1304).  The Court, however, reasoned that even the general appropriation for payment of judgments "does not create an all-purpose fund for judicial disbursement," but instead "funds may be paid out only on the basis of a substantive right to compensation based on the express terms of a specific statute."  Id. at 432 (citations omitted).

For these and other reasons, the Supreme Court in Richmond held that "[w]hether there are any extreme circumstances that might support estoppel in a case not involving payment from the Treasury is a matter we need not address;" however, "[a]s for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds."  Id. at 434.   "In this context there can be no estoppel, for courts cannot estop the Constitution."  Id.

## 2.       Courts in the United States Court of Appeals for the Third Circuit

Despite the rule announced by the Supreme Court in Richmond, there appears to be some uncertainty among federal courts within the Third Circuit whether estoppel arguments against the government may be available and in what rare circumstances.[12]   The United States Court of

_____

[12]See, e.g., Pension Benefit Guar. Corp. v. White Consol. Industries Inc., 72 F.Supp.2d 547, 551 (W.D.Pa. 1999).  In Pension Benefit Guar. Corp. the court noted that while the Supreme Court in Richmond stopped just short of holding that estoppel can never be asserted against the government, and "while we believe the Supreme Court's treatment leads to only one conclusion, the Third Circuit has held otherwise and found that estoppel may be asserted as an equitable defense against a government claim if a defendant satisfies the additional burden of establishing 'some affirmative misconduct on the part of the government officials.'"  Id. at 551 (quoting

21

Appeals for the Third Circuit recognizes that Richmond left open the possibility that some type

of affirmative misconduct might give rise to estoppel against the government.  See SIU de Puerto

Rico v. Virgin Islands Port Auth., 42 F.3d 801, 803-804 (3d Cir. 1994) ("The government

cannot be estopped from denying the validity of an agreement unless it engaged in affirmative

misconduct  as opposed to mere omission or negligent failure.")(internal quotations

omitted)(quoting United States v. Pepperman, 976 F.2d 123, 131 (3d Cir. 1992)); Cf. Richmond,

496 U.S. at 421 ("[S]ome type of 'affirmative misconduct' might give rise to estoppel against the

Government.")).  Based upon this approach to equitable estoppel, the test for equitable estoppel

arguments against the government pre-Richmond has continuing force in this circuit.

The United States Court of Appeals for the Third Circuit in United States v. Asmar, 827

F.2d 907 (3d Cir. 1987), which predated the Richmond decision by three years, set forth the test

for equitable estoppel against the government pre-Richmond.  Under Asmar, in addition to these

three traditional elements of an estoppel defense – (1) a misrepresentation by another party, (2)

reasonable reliance, and (3) to one's detriment – the court of appeals added a fourth element for

estoppel arguments against the government – some "affirmative misconduct" on the part of the

government.  827 F.2d at 912.

In Pepperman, which followed Richmond by two years, the Court of Appeals for the

Third Circuit in an appeal of a bankruptcy court decision "only briefly" considered the argument

there that the IRS should be equitably estopped from denying the existence of what the trustee

asserted was the IRS's agreement to credit the trust fund.  Id. at 131.  The court of appeals noted

_____

United States v. Asmar, 827 F.2d 907, 911 n.4 (3d Cir. 1987); citing United States v. Pepperman,
976 F.2d 123, 131 (3d Cir.1992)).

that, had the trustee shown the kind of "affirmative misconduct" required before estoppel against the government can be contemplated under Asmar, the court of appeals would be required to remand the issue because neither the bankruptcy court nor the district considered it. Id. The court of appeals, however, found the estoppel argument to be at most ambiguous and because the trustee had not established "the affirmative misconduct or rare and extreme circumstances necessary to allow an estoppel claim to run against the government," determined that it need not consider whether he proffered adequate evidence of the other elements of estoppel. Id.

In Monongahela Valley Hospital v. Sullivan, 945 F.2d 576, 588-90 (3d Cir. 1991), the court of appeals addressed the argument whether the Secretary of Health and Human Services was equitably estopped from imposing certain regulations due to his earlier failure to clarify the agency's change in position on certain funded depreciation rules related to reimbursing health care providers for services. The court of appeals "conclude[d], first, that [the] estoppel argument is foreclosed by [Richmond], which held that the government, despite the erroneous oral and written representations of a federal employee, was not equitably estopped from determining that a claimant who exceeded the statutory limit on earnings was ineligible for disability benefits." Id. at 588. The court of appeals explained that under Richmond, absent extreme circumstances, a party cannot invoke equitable estoppel against the government in asserting certain monetary claims. Id. at 589. The court of appeals found that no such extreme circumstances existed in that case. Id.

The court in Monongahela Valley Hospital, however, further concluded that even if Richmond did not preclude estoppel in that case, the district court correctly determined that the party invoking equitable estoppel otherwise had failed to meet the requirements for invoking

23

equitable estoppel.  Id. at 589 (citing, inter alia, Asmar, 827 F.2d at 912 (3d Cir.1987)).  The court of appeals noted in Asmar it had distilled the traditional elements of equitable estoppel, as well as having identified a fourth element that must be proven when a party alleges estoppel against the government, namely, "affirmative misconduct."  Id.(citations omitted).  Considering the Asmar test, the court of appeals determined in Monongahela Valley Hospital, even assuming a misrepresentation, that the district court correctly found that the party invoking equitable estoppel had failed to establish the second and third elements of equitable estoppel – reasonable reliance to its detriment.  Id.  In addition, the court of appeals found that the failure to clarify the agency's position on the application of the regulations did not amount to affirmative misconduct Id. at 590.

In Fredericks v. IRS, 126 F.3d 433 (3d Cir. 1997), the court of appeals noted that "[t]his court is among the majority of circuits recognizing estoppel as an equitable defense against government claims, but in such a context we impose an additional burden on claimants to establish some 'affirmative misconduct on the part of the government officials.'"  Id. at 438 (quoting Asmar, 827 F.2d at 911 n. 4, 912; citing Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir.1996)).  The court of appeals commented that "the additional element reflects the need to balance both the public interest in ensuring government can enforce the law without fearing estoppel and citizens' interests 'in some minimum standard of decency, honor, and reliability in their relations with their Government.'"  Id. (quoting Asmar, 827 F.2d at 912).  In Fredericks, the court of appeals addressed in detail the elements required to establish equitable estoppel against the government.  In so doing, the court of appeals cited Richmond on one occasion, but did not directly address the breadth of the Supreme Court's holding in Richmond.  Id. at 443.

24

District courts in this circuit have either applied <u>Richmond</u> outright to applicable equitable estoppel claims against the government or have followed the approach of the court of appeals in <u>Monongahela Valley Hospital</u> and determined whether a party could establish equitable estoppel against the government subject to the test set forth in <u>Asmar</u>.  <u>Compare</u> <u>United States v. Chambers</u>, 92 F.Supp.2d 396, (D.N.J. 2000) (citing <u>Richmond</u> for the rule that "equitable estoppel is not a basis for money claims against the government")(internal quotations omitted)) <u>and</u> <u>Brown v. Metropolitan Life Ins. Co.</u>, 1995 WL 298220 (E.D.Pa., May 10 1995)("It is well settled that estoppel may not be asserted against the federal government when the plaintiff seeks to recover money not authorized by statute.") <u>with</u> <u>Westinghouse Electric Corp. v. United States Dep't of the Navy</u>, 894 F.Supp. 204, 210 (W.D. Pa. 1995)(discussing <u>Richmond</u> but, because the Supreme Court did not adopt a categorical rule, analyzing whether equitable estoppel could be established based upon the "affirmative misconduct" test) <u>and</u> <u>Davis v. United States</u>, 1998 WL 401640 (E.D. Pa., July 9, 1998).

**3.      Equitable Estoppel on the Facts of This Case**

In this case, it appears that <u>Richmond</u> applies and precludes plaintiff's estoppel argument. In the alternative, however, the court finds that plaintiff, based upon the record before the court, cannot make out an equitable estoppel argument overriding his FTCA statute of limitations defect under the test set forth in <u>Asmar</u>.  Here, plaintiff alleges that Sullivan, the USPS employee who processed his initial July 2003 SF-95 claim, mischaracterized the nature of the form that he was submitting and implied that it was merely an estimate required to process his request for payment in order to have his car repaired, rather than a full statement of his claim against USPS for the collision.  Even assuming <u>arguendo</u> that a misrepresentation was made by Sullivan to

plaintiff concerning the nature and consequences of submitting the July 2003 SF-95 claim, plaintiff cannot satisfy the second element of an equitable estoppel argument against the government – namely, reasonable reliance.

In this case, the alleged misrepresentations took place over the course of a few days while plaintiff engaged in direct communications over the telephone with Sullivan about submitting his claim for car repairs even though he had engaged counsel to handle his claim.  The SF-95 form itself contained explicit instructions which included warnings to claimants like plaintiff that both property damage and personal injury claims must be included on the form and that the payment of the sum requested would be payment in full satisfaction of all claims arising from the incident.

In addition, within one week of the alleged misrepresentations, and well within the time period for amending the July 2003 SF-95, by letter dated August 2, 2003 plaintiff's counsel was provided with a copy of the fully executed July 2003 SF-95 claim that plaintiff had presented to the agency on his own.  The federal regulations expressly provide that claims may be amended at any point before a final decision is rendered by the agency.  See 28 C.F.R. § 14.2 (c); 39 C.F.R. § 912.5 (b).  Although the July 2003 claim was not finally denied by the USPS until April 14, 2004, nine months after its presentment to the agency, plaintiff, although he had ample opportunity, never amended his initial claim set forth in the July 2003 SF-95 claim

Moreover, the April 14, 2004, letter denying the July 2003 SF-95 claim clearly stated the two options available to the plaintiff under the applicable statute of limitations.  It informed plaintiff and his counsel that he could seek reconsideration by the agency within six months or file suit in federal court within six months.  The plaintiff failed to take either of these options within six months, but instead waited until May 2005 to file another claim, the May 2005 SF-95

claim, some thirteen months later.

Finally, even assuming that erroneous information may have been provided to the plaintiff in telephone conversations with Sullivan, there is ample evidence in the record that the correct information was provided in written form to both plaintiff and his counsel through the express instructions on the SF-95 form, the federal regulations established for both the FTCA and the USPS, and the April 14, 2004, letter of final denial from the USPS.  Given these undisputed facts, plaintiff cannot establish reasonable reliance necessary to estop the defendant from asserting that the July 2003 SF-95 was a valid claim that was finally denied by the USPS by letter dated April 14, 2004.[13]

### *Conclusion*

Plaintiff's July 2003 SF-95 claim was a valid, fully-executed claim.  This court lacks subject-matter jurisdiction to hear plaintiff's claim by reason of plaintiff's failure to comply with the applicable mandatory statute of limitations .  Plaintiff did not file suit in this district court within the requisite six-month period following the denial of the July 2003 SF-95 claim on April 14, 2004.  In addition, plaintiff in response to the motion to dismiss for lack of subject-matter jurisdiction cannot prevail on his equitable estoppel argument against the government's jurisdictional challenge to this court's jurisdiction under the rule established by the United States Supreme Court in <u>Richmond</u> and the modified test for equitable estoppel adopted by the United States Court of Appeals for the Third Circuit in the various decisions discussed above.

---

[13]In light of this finding, the court need not reach the "affirmative misconduct" prong of the test set forth in <u>Asmar</u>.

The July 2003 SF-95 claim was a valid, fully executed claim according to the statutory requirements of the FTCA.  Plaintiff failed to comply with the mandatory statute of limitations period imposed for this claim.  Because plaintiff's complaint cannot be amended to assert valid grounds for equitable estoppel against the government, the motion to dismiss will be granted with prejudice.

### *Order*

ACCORDINGLY, this 26th day of March 2007, after consideration of defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(1) and the written submissions of the parties;

IT IS ORDERED that the motion to dismiss filed by the defendant for lack of subject-matter jurisdiction (Doc. No. 9) shall be and hereby is GRANTED.

The clerk shall mark this case as closed.


By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District

cc:    Counsel of Record

28